## Hite v. Reynolds, et al.

(Decided March 12, 1915.)

### Appeal from Graves Circuit Court.

1. Land—Sale of—Vendor and Mortgage Liens—How Enforced.— R. sold for $1,800.00 a 72-acre farm to H. and O. upon which W. held a mortgage lien for $800.00. W. accepted the note of H. and O. for the $800.00 R. owed him, due one year after date, secured by a mortgage on a 30-acre farm belonging to H.'s wife, but also retained a lien on the 72-acre farm purchased by H. and O. of R., as further security for the note. R. also retained a vendor's lien on the 72-acre farm to secure $1,000.00, the remainder of the purchase money H. and O. owed him, and for which H. and O. gave him five notes of $200.00 each, payable in 1, 2, 3, 4 and 5 years, respectively, providing that if the first was not paid at maturity all should then become due. When H. and O. failed to pay at maturity the $800.00 note of W. and the first of the $200.00 notes of R., W. and R. jointly sued H. and O. to recover the sums due them, respectively, and to enforce their liens in satisfaction thereof, making the wife of H. a party. Held, that the rights of the parties were properly determined by the judgment of the circuit court, which directed the sale, first, of Mrs. H.'s 30-acre farm to pay W.'s debt, and the payment of such balance as might remain out of the proceeds of the 72-acre farm; and also directed the sale of the 72-acre farm to satisfy such balance as might remain of W.'s debt and then to pay the notes for purchase money owing by H. and O. to R.

2. Homestead—Right of Wife to Mortgage to Secure Husband's Debt.—The fact that the 30-acre farm upon which the mortgage was given to secure the $800.00 note of W. was worth less than $1,000.00 and owned and occupied by the wife as a homestead, did not affect the validity of the mortgage, as Section 2127, Kentucky Statutes, empowered her to mortgage it for the purpose of securing the debt of another, including her husband.

MOORMAN & WARREN for appellant.

HESTER & HESTER for appellees.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

This litigation arose out of the sale and conveyance by the appellee, M. W. Reynolds, of a seventy-two-acre tract of land lying in Graves County, to John W. Hite and E. R. O'Connor. The appellant, Mrs. J. E. Hite, wife of John W. Hite, owned in her own right a thirty-acre tract of land in the same county, upon which she, her husband and E. R. O'Connor, their adopted son, resided. Shortly after reaching his majority O'Connor married, following which he and the Hites found the thirty-acre farm two small for their joint needs, so they concluded to sell it and invest the proceeds, as far as they would go, in a larger tract of land, better suited to their purposes. To this arrangement Mrs. J. E. Hite seems to have fully assented and was a party.

Thereafter J. W. Hite and E. R. O'Connor, with the consent of Mrs. J. E. Hite, opened negotiations with the appellee Reynolds looking to the purchase of his seventy-two acre farm. At that time the appellee R. S. Wilson held a mortgage on Reynolds' farm, to secure a note of $800.00 for money he had loaned Reynolds. The appellant, Mrs. J. E. Hite, J. W. Hite and E. R. O'Connor were advised of the existence of this mortgage. Reynolds offered to sell J. W. Hite and E. R. O'Connor his farm at the price of $1,800.00; $800.00 to be paid in cash and the remainder in five notes of $200.00 each, bearing six per cent. interest from date, payable in one, two, three, four and five years, respectively, and secured by a vendor's lien on the land. The cash payment was, as Reynolds informed Hite and O'Connor, desired to pay the $800.00 note held against Reynolds by Wilson, and discharge the mortgage lien given on his farm to the latter. J. W. Hite and E. R. O'Connor expressed their willingness to pay $1,800.00 for Reynolds' farm upon the terms proposed, but admitted their inability to make the $800.00 cash payment. They, however, told Reynolds that they or Mrs. J. E. Hite had a thirty-acre farm which they could sell for $800.00 and would give him a mortgage on the farm to secure the $800.00 payment. Reynolds refused to accept the mortgage, but informed them that as he wanted to pay the $800.00 he owed Wilson, the latter might be willing to accept the mortgage for $800.00 on the Hite thirty-acre farm in satisfaction of the mortgage debt of that amount Reynolds was owing him.

Thereupon J. W. Hite, O'Connor and Reynolds went to see Wilson and laid the matter before him. Wilson refused to accept a mortgage on the Hite thirty-acre farm in satisfaction of the note and mortgage of Reynolds held by him, but agreed that Reynolds might sell his farm to Hite and O'Connor for $1,800.00; that he would accept the joint note of Hite and O'Connor for $800.00, secured by a mortgage on the Hite thirty-acre farm, and give them a year to pay it, but that he would still hold his lien on the Reynolds farm as additional security for the $800.00, and that as Reynolds was to give Hite and O'Connor from one to five years to pay the remaining $1,000.00 of the $1,800.00 they were to give him for his land, he (Wilson) would expect his $800.00 note to be paid before Reynolds was paid the $1,000.00 due him, and, if not so paid, he would enforce its satisfaction by a sale of the Hite land under his mortgage before enforcing his lien on the Reynolds land.

The trade was closed between the parties upon the terms proposed by Wilson, and Reynolds and wife in accordance therewith executed to J. W. Hite and E. R. O'Connor a deed conveying them the seventy-two acres of land, upon receiving which J. W. Hite and E. R. O'Connor executed to Reynolds their five joint notes of $200.00 each, bearing interest and payable as above stated. At the same time J. W. Hite and E. R. O'Connor executed their joint note to the appellee R. S. Wilson for the $800.00 due him, and the mortgage agreed to be given on the Hite thirty-acre farm to secure its payment was also executed by J. W. Hite and his wife, the appellant J. E. Hite, as had been agreed between them, Wilson and Reynolds. The deed and mortgage were written by the Clerk of the Graves County Court, and a vendor's lien was retained in the deed on the seventy-two acres of land, to secure the payment of the five notes of $200.00 each executed by J. W. Hite and E. R. O'Connor to Reynolds, it being provided therein that if the makers failed to pay the first or any one of the $200.00 notes when due, all should immediately become due and payable. The deed also retained a lien on the land to secure the $800.00 note held by R. S. Wilson, in respect to which it states:

"It is understood, agreed and made a part of the consideration herein, that the $800.00 note above described is and shall be superior to the balance of the

notes described herein, and the said last notes are not collectable until after said first note has been fully, paid."

The mortgage from J. E. Hite and J. W. Hite to R. S. Wilson, in addition to setting out the $800.00 note executed by J. W. Hite and E. R. O'Connor to R. S. Wilson, and describing the thirty-acre tract of land, contains this recital:

"And in order to further secure the payment of the said note the parties of the first part hereby grant, sell and mortgage to the party of the second part, etc."

Shortly after the execution of the mortgage to R. S. Wilson by J. W. Hite and J. E. Hite on the thirty-acre farm of the latter, she sold and, in conjunction with her husband, conveyed the land to one T. L. Cameron, at the price of $800.00 and accepted his note therefor, payable on the day the note of $800.00 to R. S. Wilson, secured by the mortgage, became due. The deed to Cameron was made subject to the mortgage lien in favor of Wilson. After thus purchasing the land of the Hites, Cameron advised them that he would be unable to pay for it and offered to reconvey it to Mrs. Hite in satisfaction of the note which he had executed to her. This offer she accepted, and Cameron thereupon executed to her a deed reconveying her the land, which reinvested her with the legal title, subject to the mortgage in favor of Wilson.

J. W. Hite and E. R. O'Connor having failed to pay at their maturity the $800.00 note of Wilson and the first of the $200.00 notes of Reynolds, Wilson and Reynolds instituted a joint action against them and Mrs. J. E. Hite, whereby Wilson sought to recover of J. W. Hite and E. R. O'Connor personal judgment for the amount of the $800.00 note they had executed to him, and to enforce, first, his mortgage lien on the Hite thirty-acre farm for its payment, and second, his lien on the Reynolds land for the balance; and Reynolds sought a personal judgment against J. W. Hite and E. R. O'Connor for the aggregate amount of the several notes, to-wit: $1,000.00, due him, and the enforcement of his vendor's lien on the seventy-two acre farm in satisfaction thereof.

It was, in substance, alleged in the petition that the draftsman of the deed from Reynolds to J. W. Hite and E. R. O'Connor, by the fraudulent procurement of the latter, or mistake on his part, erroneously inserted

therein the clause quoted above instead of stating, as he was instructed by Reynolds and Wilson to do, what had actually been agreed upon by the parties to the conveyance, viz.: that the appellant, Mrs. J. E. Hite's, thirty-acre tract of land, in the event of the nonpayment at maturity of the $800.00 note due Wilson, should first be subjected to its payment; and that Wilson's lien on the seventy-two acre tract sold by Reynolds to J. W. Hite and E. R. O'Connor to further secure its payment, which was superior to that retained by Reynolds to secure the payment of the five $200.00 notes executed to him by J. W. Hite and E. R. O'Connor, should next be enforced, if necessary, for such balance thereof as the Hite land did not pay. The court was asked to reform the deed by making the corrections indicated.

By their joint answer J. W. Hite and E. R. O'Connor denied the alleged mistake in the deed from Reynolds to them, and also denied that the contract under which they purchased the Reynolds land required the sale first of Mrs. J. E. Hite's land to pay the Wilson $800.00 note; and alleged that she gave the mortgage on her land to secure its payment, with the agreement and understanding that it would be enforced and her land sold in satisfaction of the Wilson note, only in the event it was not paid by the enforcement of the lien which Wilson also held on the Reynolds land to secure its payment.

The appellant, J. E. Hite, filed a separate answer, containing substantially the same denials and averments found in the joint answer of J. W. Hite and E. R. O'Connor; and further alleging that the thirty-acre farm upon which she gave the mortgage was owned and occupied by her as a homestead; that it was of less value than $1,000.00 and that she executed the mortgage to secure the $800.00 note to Wilson under an agreement that she was to be conveyed by the deed from Reynolds, such an interest in the seventy-two-acre tract of land as would equal the value of her thirty-acre farm, but that the deed was not so made. The affirmative matter of the two answers was controverted by reply.

Following the taking of proof by the parties and the submission of the case, the circuit court gave the appellee R. S. Wilson personal judgment against the defendants, J. W. Hite and E. R. O'Connor, for the amount of the $800.00 note, with six per cent. interest from August 21, 1913, and the appellee M. W. Reynolds personal judg-

ment against them for $1,080.00, with six per cent. interest from August 21, 1913; adjudged the enforcement of Wilson's mortgage lien on the Hite thirty-acre tract of land and the lien given him by the deed from M. W. Reynolds to J. W. Hite and E. R. O'Connor on the seventy-two acres of land therein conveyed the latter, by a sale of the lands to satisfy his lien debt, but directed that the Hite land be sold first for that purpose, and then the Reynolds land to pay such part of the debt as may not have been discharged by the sale of the Hite land. Also adjudged the enforcement of Reynolds' lien on the seventy-two-acre tract and directed its sale in satisfaction of his debt, subject to the prior lien and debt of Wilson, or so much thereof as may not have been satisfied by the sale of the Hite land. From that judgment Mrs. J. E. Hite has appealed.

It is proper to say in this connection that the record furnishes no proof whatever of any such agreement as that set up in the answer of Mrs. Hite. On the contrary, the absence of any such agreement or understanding is established by her deposition, for it frankly admits that she consented to mortgage her thirty-acre farm to secure Wilson's note, to aid her husband and adopted son in purchasing the Reynolds land; and that she sold her farm to Cameron because she wished and intended that its proceeds should be used by her husband and adopted son in paying for the Reynolds land. The deposition also contains the admission that there was no agreement between her, Reynolds and Wilson, or between her and her husband or son, that she was to be conveyed an interest in the Reynolds land as a consideration for mortgaging or selling her land.

It is equally manifest from her testimony, and other evidence as well, that she was fully informed of the nature and terms of the contract under which Reynolds sold his farm to her husband and son; that she even went to the trouble of going with her husband to view the Reynolds land before its sale to him and the son was consummated, and that her husband had full authority from her to act for her in selling her land or in representing that she would mortgage it for the purpose of enabling him and the son to buy the Reynolds farm.

According to the testimony of R. S. Wilson, M. W. Reynolds, Sam Hall, Mrs. Mary Fortner and ———— Lockhart, the trade as made between Reynolds and Wil-

son, J. W. Hite and E. R. O'Connor, was that J. W. Hite and E. R. O'Connor were to buy the Reynolds farm at the price of $1,800.00; $800.00 of which was to be paid in their note of that amount executed to R. S. Wilson and due one year after date, to be secured by a mortgage on the thirty-acre farm owned by Mrs. J. E. Hite; and that for the remaining $1,000.00 J. W. Hite and E. R. O'Connor were to execute to Reynolds their five notes of $200.00 each, payable in one, two, three, four and five years, respectively, which notes were to be secured by a lien on the Reynolds farm, and that upon the same farm R. S. Wilson was also to have a lien, as additional security for the $800.00 note executed to him by J. W. Hite and E. R. O'Connor; but that this lien, while superior to that of Reynolds for the several notes aggregating $1,000.00 executed to him by J. W. Hite and E. R. O'Connor, was not to be enforced by Wilson until he had first exhausted his mortgage lien on the Hite thirty-acre farm. These facts, corroborated by the other witnesses mentioned, will more clearly appear from the following questions and answers taken from the deposition of Wilson:

"Q. Which place was to furnish the money first towards paying your debt? A. My understanding was that they were to pay me out of the one they sold, the Hite land. Q. Then if I understand you, in the talk between you and the parties O'Connor said they had sold the Hite land, or contracted it to a party, at $800.00, and agreed that you could have a mortgage on this land to secure you, and if that failed to pay all of the $800.00 to you then Reynolds agreed that you should collect the balance out of his land. A. Yes, sir, that was what was said about it. Q. The deed that was actually written provides that the $800.00 should be a superior lien and be paid in full before any part of the $1,000.00 balance was to be paid. But it fails to mention anything about the Hite land in that deed. Now explain how the matter should have been arranged to agree with the contract, as it was made by the parties in your presence. A. They were to make the first payment out of the Hite land, the deed ought to have shown that. Q. State whether or not you told Reynolds that you would not look to the Hite place for your money at all. A. I did not. That was where I was expecting to get it. Q. In the contract and agreement between you parties, out of what was the

$800.00 note due you to be paid? A. Out of the Hite place. Q. Why did you require a lien on the Reynolds place for your $800.00? A. That was a small place, the Hite place was, and I wanted to be sure to get my money. * * * I told them that I didn't know anything about the Hite place and would not want to risk that, so I would want a lien on both places. Q. State what was said, if anything else, about the matter. A. I was talking to O'Connor one day and I said wasn't that the agreement, for them to pay that money out of that place on the other, and he said that was the agreement and trade, but it was not on record.''

The case turns upon an issue of fact and the question of credibility of witnesses. On the one hand we find five witnesses, Reynolds, Wilson, Hall, Lockhart and Mrs. Fortner, the last three wholly disinterested, testifying that the contract was as claimed by appellees and held by the circuit court. On the other hand, of the few other witnesses whose depositions were taken, only J. W. Hite and E. R. O'Connor testified that the contract was as claimed by them. In addition, the circumstances attending the transactions between the parties to the contract support the testimony of appellees' witnesses. Mrs. Hite, after mortgaging her land to Wilson to secure the $800.00 note of her husband and son, sold it to Cameron to get the money to pay the note. This she would not have done if she had understood that it was required of Wilson to enforce the lien he held on the Reynolds land in satisfaction of the note, before he would have the right to enforce the mortgage on her land for its payment. Furthermore, it is altogether reasonable that Wilson should have been willing to aid Reynolds to sell his farm, and J. W. Hite and E. R. O'Connor to purchase it, by taking their note for $800.00, secured by a mortgage on the farm of Mrs. J. E. Hite, in lieu of the note of Reynolds for a like amount, and yet retain as additional security for the note a lien that he already had on the Reynolds land, to be enforced, however, only in the event he failed to collect the note by enforcing the mortgage on the Hite land; but wholly unreasonable that Reynolds would have consented to such a contract as Hite and O'Connor claim was made, which would not only have allowed the retention by Wilson of the lien on the seventy-two acres of land constituting the only security Reynolds had for the $1,000.00 of

purchase money owing him thereon, but compelled him to exhaust such lien in satisfaction of his $800.00 note, before enforcing his mortgage on the Hite, land to pay it.

It appears from the record that both the Reynolds and Hite lands were sold as directed by the judgment; the former bringing $1,250.00 and the latter $725.00. So, if appellant's contention were allowed to prevail, to pay the Wilson debt, now amounting to about $1,000.00, out of the proceeds of the Reynolds land, would leave but about $250.00 to be applied on the Reynolds debt, now amounting, approximately, to $1,200. As the sale resulted under the judgment, the proceeds of the Hite land lacked $275.00 of paying Wilson's debt, and this $275.00 must, of course, be paid out of the $1,250.00 realized for the Reynolds land, which will leave but $975.00 to be applied on Reynolds' debt of $1,200.00, thereby causing the latter to sustain a loss of $225.00. The fact that Mrs. Hite's land was of no greater value than a homestead, and that it was occupied by her as such, gives her no right to complain of the judgment. Although the land could not otherwise be subjected to the payment of the note owing by her husband and adopted son to Wilson, the mortgage made it liable therefor.

Section 2127, Kentucky Statutes, provides: "No part of a married woman's estate shall be subjected to the payment or satisfaction of any liability, upon a contract made after marriage, to answer for the debt, default or misdoing of another, including her husband, unless such estate shall have been set apart for that purpose by deed of mortgage or other conveyance. * * *"

This is an express declaration that the wife's property may be mortgaged by her and her husband to secure the debt of the husband or another, regardless of whether or not it is a homestead. Miller v. Sanders, 98 Ky., 535; Wordsman v. Miller, 98 Ky., 620; New York Life Ins. Co. v. Miller, 22 R., 230.

The case presented is not one requiring the adjustment of equities as between creditors or as between debtors. Equity will not marshal securities except as against a common debtor, and will never do so where it will work injustice to an innocent third person. Hughes, Etc. v. Shannon & Lowe, 13 R., 782. To have compelled Wilson to collect his debt out of the seventy-two acre tract in-

stead of the Hite land, would have ignored the contract made by the parties and resulted in the very injury to Reynolds he attempted from the beginning to guard against. In selling his land he doubtless had two objects in view, viz.: to obtain its market value, and to be discharged from the debt of $800.00 he was owing Wilson. To effect the latter object he had first demanded that enough of the $1,800.00 he was to receive as the consideration for the land, be paid in cash to be used in liquidating the Wilson note. Failing to get the cash, he and Wilson agreed with J. W. Hite and O'Connor that Wilson would accept the joint note of the latter for the $800.00, secured by a mortgage on the land of Mrs. Hite; and while Wilson also retained as security for this note a lien on the Reynolds land, it was with the distinct understanding between all the parties that in the event of the failure of Hite and O'Connor to pay the $800.00 note at maturity, Wilson would enforce the mortgage on the Hite land for its payment; and in the event all of the debt was not obtained from the sale of the Hite land, that, for the balance, he would enforce the lien retained on the Reynolds land. That this arrangement was fully understood and agreed to by J. W. Hite, E. R. O'Connor and Mrs. J. E. Hite, the evidence leaves no doubt. Indeed, at the time of the purchase by J. W. Hite and O'Connor of the Reynolds land, they and Mrs. Hite had already contracted a sale of the latter's land to Cameron, and the mortgage was given on the Hite land with the full knowledge and intention on the part of Mrs. Hite, her husband and O'Connor, that it was to be sold and its proceeds applied to the payment of the Wilson note.

Under the contract as thus made, the lien retained by Reynolds on the land he sold J. W. Hite and O'Connor to secure the $1,000.00 of the purchase money going to him, furnished apparently safe security for the debt, as the lien of Wilson on the same land could only be enforced for what might be left unpaid of his debt after the application thereto of the proceeds arising from the sale of the Hite land. This view of the case is supported by the great weight of the evidence and is, in addition, consonant with reason.

The circuit court by the judgment rendered determined the rights of the parties without reforming the deed. This, in view of the relief sought, it had the right

to do. We are, however, satisfied from the evidence that the misleading statement in the deed was caused by a mistake or inadvertence on the part of the draftsman thereof.

Section 472, Kentucky Statutes, provided: "The consideration of any writing, with or without seal, may be impeached or denied by pleading verified by oath."

It has been held that under this statute the true consideration of a deed may be shown, although it contradict the writing. Neurenberger v. Lehenhauer, 23 R., 1753. Here the mistake in the deed is alleged in the petition, and though the petition is not verified, as the want of verification was not objected to, it must be treated as having been waived. Civil Code, Section 138; Myers v. Douglas, 99 Ky., 267.

As in our opinion the rights of the parties were properly determined by the circuit court, the judgment is affirmed.

Whole court sitting. Judge Turner dissenting.