## City of Corbin v. Louisville & Nashville Railroad Company.

(Decided March 28, 1930.)

R. L. POPE, OSCAR W. BLACK and T. B. CULTON for appellant.

WOODWARD, WARFIELD & HOBSON and TYE & SILER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

Several years ago the city of Corbin by appropriate ordinances provided for a system of sewers consisting of seven sewer districts. It was part of the plan that all the sewers in districts 4, 5, and 6 should lead to and connect with a sewage disposal plant which it proposed to construct on Lynn Camp creek. The Louisville & Nashville Railroad Company owned the property on which the city desired to place the sewage disposal plant. It also owned property across which the city wished to construct a 24-inch outfall sewer to reach the disposal plant. Thereafter the city and the railroad company entered into a contract by which the railroad company conveyed to the city a tract of land 300 feet by 130 feet in area to be used as a site for the disposal plant, and the right to enter upon the company's property and construct a sewer 24 inches in diameter under the tracks and across the property. Among the provisions of the contract, are the following:

"Fourth: That the total assessment to be paid by the Railroad Company on account of its property lying East of Railroad Street shall not exceed that proportion of the total cost (exclusive of value of the Railroad Company's land herein deeded to the City for Sewage Disposal Plant and value of right to build sewer across the Railroad Company's land, as defined in Section 5 hereof) which the area of the Railroad Company's property in the Fourth Sewer District lying between Railroad Street and a line parallel to and 210 feet East thereof, bears to the total area of the Fourth Sewer District lying West of said line 210 feet East of Railroad Street.

"Fifth: That the amount of any assessment against that portion of the Railroad Company's property in the Fourth Sewer District lying East of a line 210 feet East of and parallel to Railroad Street

is hereby agreed to be equal to the value of aforesaid land herein deeded to the City for Sewage Disposal plant, and the value of the right to enter upon the Railroad Company's property and construct the aforesaid sewer, said assessment being the agreed consideration for said land and right.

"Sixth: That in case the main outfall sewer and the Sewage Disposal Plant are made a part of a system of sewers serving property other than the Fourth Sewer District, the cost of aforesaid main outfall sewer and Sewage Disposal Plant shall be reapportioned and the Railroad Company reimbursed by the City to the amount of its pro rata share of that portion of the cost of said sewers and Sewage Disposal Plant assessed against the property other than the Fourth Sewer District."

Thereafter the sewer system was constructed, accepted, and assessments levied. The assessment on the property of the railroad company in district No. 5 was $6,608.07.

This action was originally brought by the contractor, Alex Dunn, to enforce the assessment against the railroad company and other property owners. The railroad company challenged the validity of the assessment on numerous grounds, and also sought to have the assessment credited by the sum of $5,104.37, claimed to be due from the city under section 6 of the contract. The chancellor held that none of the numerous defenses were good as against the claim of the contractor, and rendered judgment in his favor. On appeal, the judgment was affirmed. Louisville & N. R. Co. v. Dunn, 222 Ky. 422, 300 S. W. 916.

On the return of the case, the chancellor proceeded to hear the claim of the railroad company against the city theretofore asserted by amended answer and counterclaim. Demurrers were sustained to the amended answer and counterclaim and the second amended answer and counterclaim of the city. The chancellor then dismissed the counterclaim of the city and rendered judgment in favor of the railroad company against the city for the sum of $5,104.30, together with interest and costs. From that judgment, this appeal is prosecuted.

The basis of the city's counterclaim was this: The property conveyed to the city for the disposal plant was

worth far less than the taxes the railroad would have been required to pay on the property excluded from taxation. For this reason the contract in effect was an exemption from taxation. Therefore the contract was invalid, and the city had the right to pay the railroad the actual value of the property conveyed, to have the exempted property assessed, and to set off the excess against the railroad's claim under section 6 of the contract. In view of the conclusion of the court, we deem it unnecessary to determine whether the facts pleaded were sufficient to support a counterclaim. The validity of the railroad's claim under section 6 of the contract was challenged on the ground of discrimination, and, if that contention be correct, the railroad is not entitled to recover. Section 3 of our Constitution provides:

> "All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services."

The purpose of this provision was to place all citizens similarly situated on a plane of equality under the law, and it has been rigidly applied in a number of cases. Gordon v. Winchester Building Association, 12 Bush, 110, 23 Am. Rep. 713; Commonwealth v. Bacon, 13 Bush, 210, 26 Am. Rep. 189; Kentucky Trust Co. v. Lewis, 82 Ky. 579; Owen County Burley Tobacco Society v. Brumback, 128 Ky. 137, 107 S. W. 710, 32 Ky. Law Rep. 916; Barbour v. Louisville Board of Trade, 82 Ky. 645; Simpson v. Kentucky B. & L. Ass'n, 101 Ky. 496, 41 S. W. 570, 42 S. W. 834, 19 Ky. Law Rep. 1176; Locknane v. U. S. S. & L. Co., 103 Ky. 265, 44 S. W. 977, 19 Ky. Law Rep. 1984; Louisville R. Co. v. Louisville F. & L. Ass'n, 151 Ky. 644, 152 S. W. 799, 43 L. R. A. (N. S.) 600, Ann. Cas. 1915A. 89. Though by another provision of the contract it was agreed that the amount of any assessment on the railroad company's exempted land was equal to the value of the land and to the right of way, the contract went further and provided by section 6 that, in case the main outfall sewer and disposal plant were made a part of a system of sewers serving property other than the fourth sewer district, the cost of the main outfall sewer and disposal plant should be reapportioned and the railroad company reimbursed by the city to the amount of its pro

rata share of that portion of the cost of said sewers and sewer disposal plant assessed against property other than the fourth sewer district. The other property owners in the fourth sewer district were not in a position to contract with the city, and did not make any contract for reimbursement; nor did the city provide for reimbursement in the ordinance making the assessment. On the contrary, they were required to pay the whole amount of their assessment. The result is that the railroad secured by the ordinance and contract made pursuant thereto a right or privilege denied to other property owners similarly situated. No question of public service is presented. No question of classification is involved. The ordinance was for the benefit of one taxpayer. In the circumstances there is no escape from the conclusion that the ordinance and contract offend the Constitution, and are therefore invalid.

The railroad is not protected by article 1, section 10, of the Constitution of the United States, providing that no state shall pass any law impairing the obligation of contracts or by the due process clause of that instrument. No law enacted by the state or by the municipality pursuant to legislative authority and affecting the contract in question is involved. Our decision is based entirely on the invalidity of section 6 of the contract. The mere fact that the city was a municipal corporation did not give its refusal to carry out the contract the character of a law impairing the obligation of contracts or deprive the railroad of property without due process of law. St. Paul Gaslight Co. v. St. Paul, 181 U. S. 142, 21 S. Ct. 575, 45 L. Ed. 788; Dawson v. Columbia Ave. Sav. Fund, etc., Co., 197 U. S. 178, 25 S. Ct. 420, 422, 49 L. Ed. 713. On the contrary, as pointed out by Mr. Justice Holmes in the case last mentioned, "Something more than a mere refusal of a municipal corporation to perform its contract is necessary to make a law impairing the obligation of contracts."

It results from what has been said that judgment should have gone in favor of the city.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.

Whole court sitting.